# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| BOBBY JOE WILLIAMS, | CASE NO. 12-03874-NPO |
| DEBTOR. | CHAPTER 13 |
| BOBBY JOE WILLIAMS | PLAINTIFF |
| VS. | ADV. PROC. NO. 13-00001-NPO |
| JEFFREY CRAIG JAMISON<br>D/B/A SPIRIT AUTOMOTIVE SALES | DEFENDANT |

## MEMORANDUM OPINION AND ORDER ON COMPLAINT
## TO TURNOVER VEHICLE, FOR SANCTIONS AND FOR DAMAGES

This matter came on for trial on August 28, 2013, (the "Trial") on the Complaint to Turnover Vehicle, for Sanctions and for Damages (the "Complaint for Turnover") (Adv. Dkt. 1)[1] filed by Bobby Joe Williams (the "Debtor") and the Notice of Special Appearance, Answer, Affirmative Defenses and Counterclaim for Damages (the "Response") (Adv. Dkt. 7) filed by Jeffrey Craig Jamison d/b/a Spirit Automotive Sales ("Jamison") in the above-referenced adversary proceeding (the "Adversary"). At Trial, Richard R. Grindstaff, Esq. ("Grindstaff")[2]

---

[1] Citations to the record are as follows: (1) citations to docket entries in this adversary proceeding, Adv. Proc. No. 13-00001-NPO, are cited as "(Adv. Dkt. ____)"; (2) citations to docket entries in the main bankruptcy case, Case No. 12-03874-NPO, are cited as "(Dkt. ____)".

[2] The Debtor was previously represented in the main bankruptcy case by J. Thomas Ash, Esq. ("Ash"). (Dkt. 14). Grindstaff was substituted as Debtor's counsel. (*Id.*).

represented the Debtor; no attorney appeared on behalf of Jamison[3] or Spirit Automotive Sales, and Jamison himself failed to appear.

This lawsuit was initiated against Jamison doing business as Spirit Automotive Sales. At a hearing prior to Trial, it was suggested by then-counsel for the Debtor that Spirit Automotive Sales could be a limited liability company and, therefore, that Jamison may have been improperly named in the Complaint for Turnover. In the absence of any evidence presented at Trial that supports this suggestion, the Court declines to recognize Spirit Automotive Sales as a separate legal entity and in this Opinion refers to both Jamison and Spirit Automotive Sales simply as "Jamison." The Court, having considered the pleadings and evidence, finds that the Debtor is entitled to a judgment against Jamison in the amount of $3,221.58 for the reasons set forth below.[4]

## Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to the Adversary pursuant to 28 U.S.C. § 1334. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(E). Notice of the Trial was proper under the circumstances.

---

[3] Jamison was initially represented by Thomas J. Bellinder, Esq., who withdrew as Jamison's counsel. (Adv. Dkt. 11). Thereafter, Jamison represented himself, although he did not appear at Trial. Instead, Angela Davis ("Davis"), who is not an attorney, appeared at Trial purportedly on Jamison's behalf. Upon questioning by the Court, Davis stated that she is the manager at Spirit Automotive Sales and that Jamison had instructed her to appear on his behalf at Trial. Davis remained in the courtroom during the Trial but was not allowed to participate in a representative capacity for either Jamison or Spirit Automotive Sales, since she was not a licensed attorney. *See* MISS. CODE ANN. § 73-3-55; *Thomas v. Estelle*, 603 F.2d 488, 489 (5th Cir. 1979).

[4] Pursuant to Federal Rule of Civil Procedure 52, as made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

**Facts**

1. On September 26, 2012, the Debtor purchased a 2005 Infiniti G35 Sedan (the "2005 Infiniti") from Jamison (Pl. Ex. 1). To finance the purchase, the Debtor entered into a Simple Interest Retail Installment Contract (the "Contract") with Jamison. The Contract was signed by Jamison but identified the seller as "Spirit Automotive Sales" without including the words "limited liability company" or the abbreviation "L.L.C." or "LLC." *See, e.g.,* MISS. CODE ANN. § 79-29-109 (requiring a limited liability company to contain these words or one of these abbreviations in its name). Under the Contract, the Debtor agreed to pay $13,050.70, plus interest at 24.99 percent, in 48 monthly payments of $432.66 beginning on October 26, 2012. (*Id.*). Jamison retained a lien on the 2005 Infiniti to secure repayment of the loan. (*Id.*). The same day that the Debtor purchased the 2005 Infiniti on September 26, 2012, Jamison sold the Contract to United Auto Credit Corporation ("United Auto") (*Id.*).

2. In a letter dated October 2, 2012, United Auto provided the Debtor with an invoice for his first payment (Adv. Dkt. 6, Ex. B).

3. The Debtor defaulted on his first payment due under the Contract. (Adv. Dkt. 7, Ex. B). Consequently, United Auto demanded that Jamison repurchase the Contract pursuant to a "first payment default" provision in the Dealer Agreement previously entered into between United Auto and Jamison. (Adv. Dkt. 6, Ex. C).

4. On November 15, 2012, Jamison repurchased the Contract.

5. On December 10, 2012, the Debtor filed a voluntary petition for relief (the "Petition") under chapter 13 of the United States Bankruptcy Code. (Dkt. 1).

6. On December 13, 2012, Jamison repossessed the 2005 Infiniti at the Debtor's place of employment. In the Response, Jamison maintained that the repossession took place on

December 8, 2012, <u>before</u> the Debtor filed the Petition, but Jamison did not appear at the Trial and, therefore, did not present any evidence disputing the Debtor's testimony that the repossession occurred on December 13, 2012, <u>after</u> the Debtor filed the Petition. For reasons discussed later in this Opinion, this dispute is immaterial to the outcome of the Adversary because the 2005 Infiniti constituted property of the Debtor's estate even if the repossession took place on the earlier date of December 8, 2012, as alleged by Jamison.

7.  The Debtor did not discover that the 2005 Infiniti was gone until the end of his work day. He reported that it had been stolen to the Flowood Police Department on December 14, 2012. (Pl. Ex. 2).

8.  When the Debtor informed his attorney, Ash, that the 2005 Infiniti was missing, Ash learned from United Auto that the 2005 Infiniti had been repossessed by Jamison. Ash called Jamison in an attempt to persuade him to return the 2005 Infiniti to the Debtor voluntarily. Although Ash informed Jamison that the Debtor had filed the Petition, Jamison adamantly refused to return either the 2005 Infiniti or the personal belongings that were inside the 2005 Infiniti.[5] Indeed, in a separate telephone conversation, Jamison told the Debtor that he had thrown his personal belongings in the trash.

9.  The Debtor initiated the Adversary by filing the Complaint for Turnover against Jamison and United Auto. The Debtor alleged that Jamison and United Auto violated the automatic stay by failing to return the 2005 Infiniti after he filed the Petition. On January 18, 2013, United Auto filed the Answer to Complaint to Turnover Vehicle, for Sanctions and for Damages (the "Answer") (Adv. Dkt. 6). United Auto alleged in the Answer that it no longer had

---

[5] Jamison's side of the conversation is only briefly outlined here but apparently was more than a simple refusal to return the 2005 Infiniti because it was enough to convince Ash to withdraw from the main bankruptcy case. (Dkt. 14).

an interest in the 2005 Infiniti since Jamison had repurchased the Contract and further alleged that it did not have possession of the 2005 Infiniti. On January 22, 2013, Jamison filed the Response denying nearly every allegation in the Complaint for Turnover and asserting a counterclaim (the "Counterclaim') for breach of contract and damages. On February 28, 2013, the Debtor filed an Answer (Adv. Dkt. 15) to the Counterclaim.

10. The Court held a hearing on January 23, 2013, on the Debtor's request for preliminary injunctive relief under Rule 7065 of the Federal Rules of Bankruptcy Procedure. After the hearing, the Court issued the Order Granting in Part Complaint to Turnover Vehicle, for Sanctions and for Damages (the "Order") (Adv. Dkt. 12). In the Order, the Court made the following findings of fact that are relevant to the issues at Trial: (a) the Debtor retained an interest in the 2005 Infiniti; (b) the 2005 Infiniti is property of the Debtor's bankruptcy estate, and (c) the Debtor is entitled to turnover of the 2005 Infiniti. (*Id.*). The Court did not rule upon the Debtor's request for a permanent injunction and damages and/or sanctions and did not address Jamison's Counterclaim, but reserved those issues for Trial.

11. The Debtor and United Auto resolved their dispute, and an Order (Adv. Dkt. 18) was entered dismissing United Auto from the Adversary.

12. With regard to the Debtor's bankruptcy case, the Court confirmed the Debtor's chapter 13 plan (the "Plan") on June 5, 2013 (Dkt. 54). Through the Plan, the Debtor is making payments totaling $13,050.70, plus seven (7) percent interest, to Spirit Automotive Sales on its allowed secured claim (Order, Dkt. 49).

13. The Pretrial Order (Adv. Dkt. 22) was entered on August 15, 2013. Jamison failed to cooperate with the Debtor's current counsel, Grindstaff, in preparing the consolidated Pretrial Order, although the Notice of Pretrial Order Due Date and Trial Setting (Adv. Dkt. 20),

entered by the Court through the Clerk of the Bankruptcy Court, required him to do so. The Debtor submitted the proposed statement of Findings of Fact and Conclusions of Law (Adv. Dkt. 24) on August 28, 2013. Again, however, Jamison failed to provide the Court with his proposed statement.

14. The Court held the Trial on August 28, 2013. The Debtor testified at Trial that he retrieved the 2005 Infiniti from Jamison's dealership after the hearing on January 23, 2013, but that all of his personal belongings were missing. This discovery did not surprise the Debtor because Jamison previously had told him that he had thrown them all away. In addition, however, the Debtor discovered that Jamison had removed the license plate purchased by the Debtor and had changed the ignition lock assembly.

15. At Trial, the Debtor introduced into evidence an itemization of his damages, entitled "Items Missing from Vehicle Not Returned and Value" (the "Itemization") (Pl. Ex. 3). The Itemization lists the value of assorted clothing, shoes, and jewelry that were missing from the 2005 Infiniti and also includes transportation expenses and the cost to replace the missing license plate. According to the Itemization, the Debtor's damages total $1,530.00,[6] which does not include the cost to replace the ignition lock assembly and key ($291.58) or attorney's fees ($1,400.00), all of which he attributes to Jamison's repossession of, and failure to return the 2005 Infiniti.

**Discussion**

Once a bankruptcy petition is filed, the automatic stay provisions of the Bankruptcy Code prevent creditors from pursuing collections efforts against the debtor or against property of the bankruptcy estate for prepetition debts. 11 U.S.C. § 362; *Campbell v. Countrywide Home Loans,*

---

[6] The Debtor's calculation in the Itemization of $1,530.00 appears to be less than the correct amount. (Pl. Ex. 3).

*Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008). Under 11 U.S.C. § 541(a)(1),[7] a bankruptcy estate is comprised of all of the debtor's legal or equitable interests in property as of the commencement of the case. The Court already has ruled that the Debtor had an interest in the 2005 Infiniti, that Jamison had a duty to return it to him, without regard to whether the original repossession was lawful, and that Jamison violated the automatic stay by failing to return the 2005 Infiniti to the Debtor. The primary issue presented at Trial was whether Jamison's violation of the automatic stay was willful, so as to merit an award of actual damages, including attorney's fees, pursuant to § 362(k).

**A.     Damages**

Section 362(k) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). The Fifth Circuit Court of Appeals has set forth a three-part test for establishing an actionable violation of the automatic stay under § 362(k), as follows: (1) the creditor knew of the existence of the stay; (2) the creditor's acts were intentional; and (3) the creditor's acts violated the stay. *Campbell*, 545 F.3d at 355; *see also Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008). Thus, a violation is "willful" if the creditor knew of the automatic stay and his actions that violated the stay were intentional, notwithstanding that the creditor believed in good faith that it had a right to the property. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005). Once a willful violation is proven, damages under § 362(k) must be established with reasonable certainty. *Johnson v. Magee Rentals, Inc. (In re Johnson)*, 478 B.R. 235, 248 (Bankr. S.D. Miss. 2012).

---

[7] Hereinafter, all code sections refer to the United States Bankruptcy Code, located at Title 11 of the United States Code, unless specifically noted otherwise.

Jamison's postpetition repossession of, and failure to return the 2005 Infiniti to the Debtor, despite his knowledge of the Debtor's pending bankruptcy case and requests to turnover the 2005 Infiniti, constituted a willful violation of the automatic stay within the meaning of § 362(k). As a result, the Debtor is entitled to recover his actual damages. The Debtor claims that these damages include: (1) the value of his missing personal belongings; (2) transportation expenses; (3) costs to replace the ignition lock assembly, key, and license plate; and (4) attorney's fees. As to his missing personal belongings, the Court has reviewed the Itemization and finds the total estimated value of the Debtor's assorted clothing, shoes, and jewelry to be reasonable. (Pl. Ex. 3). With respect to transportation costs, the Debtor testified that on twenty-five (25) days from December 13 to January 23, 2013, he paid at least $25.00 to various individuals to drive him to and from work. In the Itemization, the Debtor requests payment of $500.00 for his transportation costs,[8] an amount that the Court also finds to be reasonable for the loss of use of the 2005 Infiniti during the period of time it was in Jamison's possession. The Debtor has provided receipts showing that he paid $10.00 to purchase a substitute license plate, and $291.58 to replace the ignition lock assembly and obtain a new key. (Pl. Exs. 3 & 4). The Court finds that these costs are reasonable as well. The Court next turns to the Debtor's request for attorney's fees.

Legal fees and costs incurred in prosecuting a § 362(k) action are recoverable as part of actual damages awarded for willful violations of the automatic stay. 11 U.S.C. § 362(k)(1). The reasonableness of legal fees is determined in light of the twelve (12) factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).

---

[8] In the Itemization, the Debtor seeks $500.00 for payment of his transportation expenses, although his testimony indicates that his costs exceeded that amount.

In the Adversary, the Debtor seeks $1,400.00 in attorneys' fees.[9] The Debtor's counsel, Grindstaff, testified at Trial regarding the reasonableness of these fees. Grindstaff testified that he charged the Debtor an hourly billing rate of $200.00 and expended seven (7) hours in prosecuting the Adversary. After applying the *Johnson* factors, the Court finds that the attorneys' fees sought by the Debtor in the amount of $1,400.00 are appropriate and reasonable.

**B.    Counterclaim**

In his Counterclaim, Jamison seeks damages against the Debtor on the ground that the Complaint for Turnover was filed in bad faith, "was frivolous and was meant only to harass, disturb and inconvenience" him. (Resp. at 8). Jamison alleges in the Counterclaim that the Debtor knew that the repossession of the 2005 Infiniti had occurred before the Debtor had filed the Petition. Jamison does not explain in the Counterclaim why this sequence of events, if true, would render the Complaint for Turnover frivolous.

As a preliminary matter, the Court notes that Jamison failed to contribute any information in the consolidated Pretrial Order and failed to submit a statement of proposed findings of fact and conclusions of law. Therefore, the Counterclaim was not properly preserved for Trial and is procedurally barred. *See* FED. R. BANKR. P. 7016(d); *Flannery v. Carroll*, 676 F.2d 126, 130 (5th Cir. 1982) (pretrial order generally governs the issues and evidence presented at trial). Additionally, however, no evidence was offered to dispute the Debtor's testimony that the repossession occurred after the Petition had been filed. The Court's previous finding that the repossession occurred when the Debtor said it did deprives Jamison of the critical fact he relies upon in establishing his Counterclaim.

---

[9] The Debtor did not assert a claim for costs incurred by his counsel.

Even if the Court were inclined to consider the merits of Jamison's Counterclaim, the Court finds that Jamison mistakenly assumes that the date property is repossessed is the sole relevant factor in determining whether it constitutes property of the bankruptcy estate and, therefore, whether it is subject to the automatic stay. It is apparent that Jamison believed that he had a greater right to the 2005 Infiniti than the Debtor, simply because he exercised his right to repossess it before the Petition was filed. It is well settled, however, that property that has been repossessed even before a bankruptcy petition is filed may be deemed property of the bankruptcy estate if the debtor still has an interest in the repossessed property. *See United States v. Whiting Pools*, 462 U.S. 198, 207 (1983); *Hargest v. Horizon Automotive Group, LLC (In re Hargest)*, No. 12-03024, 2012 WL 5198344, at *5 (Bankr. S.D. Tex. Oct. 19, 2012). Assuming that the repossession by Jamison occurred before the Petition had been filed, the Debtor's bankruptcy estate nevertheless included the 2005 Infiniti when the Petition was filed, because the Debtor still had a legal and beneficial interest in it. Jamison has not made any allegation in the Response or Counterclaim, and there was no evidence presented at Trial, suggesting that the Debtor's interest in the 2005 Infiniti had been extinguished prior to the filing of the Petition. For this additional reason, Jamison's Counterclaim lacks merit, even if it were properly before the Court.

**Conclusion**

For the reasons stated above, the Court finds that the Debtor is entitled to a permanent injunction authorizing the Debtor to retain possession of the 2005 Infiniti. The Court further finds that the Debtor is entitled to damages in the total amount of $3,221.58 against Jamison for his willful violation of the automatic stay pursuant to § 362(k). In addition, the Court finds that

the Counterclaim should be dismissed with prejudice. A separate final judgment will be entered pursuant to Rule 7058 of the Federal Rules of Bankruptcy Procedure.

    SO ORDERED.

/s/ Neil P. Olack
Neil P. Olack
United States Bankruptcy Judge
Dated: September 5, 2013